**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| FISCALNOTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| DANIEL GERMAIN, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GERMAIN CONSULTING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, FiscalNote, Inc. ("FiscalNote"), by and through undersigned counsel, brings suit against Defendants, Daniel Germain ("Germain") and Germain Consulting, LLC ("Germain Consulting"), and in support thereof states as follows:

### STATEMENT OF THE CASE

In this action, FiscalNote seeks relief from Germain's wholesale theft of its confidential and proprietary documents and information.  In the last days of his employment with FiscalNote, Germain intentionally stole thousands of FiscalNote's documents, with the intent to use that information to establish his own business, forcing FiscalNote to compete directly against its own trade secrets. Even after he was fired from FiscalNote and was no longer authorized to access FiscalNote's systems, he downloaded an additional 98 files containing confidential information about FiscalNote's strategic plans, products, and customers using his personal e-mail account.

Germain then sent solicitation materials to FiscalNote's customers on behalf of his new business, Germain Consulting, in which he made false statements about the services FiscalNote

provides.  Worse, Germain claimed to know these alleged facts through his inside experience with FiscalNote.  Further, Germain also fed misleading and outdated documents and information to the media and to FiscalNote's customers in order to defame and disparage FiscalNote and to steal its business.  Among other things, he curated a selective set of documents which paint a false and misleading impression of the state of FiscalNote's customer relationships.  He provided that misleading information to the *Washington Business Journal*, which then published a negative article based in part on the statements.

FiscalNote now seeks relief from this Court to put an end to Germain's campaign to damage the company for the unjust enrichment of himself and his new company.

## Parties

1. FiscalNote is corporation organized under the laws of the State of Delaware, having its principal place of business in the District of Columbia.

2. Germain is an adult resident of the Commonwealth of Virginia.

3. Germain Consulting is a limited liability company organized under the laws of the Commonwealth of Virginia.  Upon information and belief, Germain is the sole member of Germain Consulting.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over FiscalNote's federal law claims under 28 U.S.C. § 1331 because those claims arise under the laws of the United States, and over FiscalNote's state law claims under 28 U.S.C. § 1367 because those claims arise out of the same transactions or occurrences and form part of the same case or controversy as FiscalNote's federal law claims.

5.      Alternatively and independently, this Court has subject matter jurisdiction over FiscalNote's claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

6.      Defendants are subject to general personal jurisdiction in this Court because they are citizens and residents of the Commonwealth of Virginia, and specific personal jurisdiction, pursuant to Va. Code Ann. § 8.01-328.1(A)(1) and (3), because FiscalNote's claims arise from acts undertaken by Defendants in the Commonwealth of Virginia.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because all Defendants are residents in this district and a substantial part of the events or omissions giving rise to FiscalNote's claims occurred in this district.

## Facts Common to All Counts

### FiscalNote's Business

8.      FiscalNote is an innovative software, data, and media company that offers aggregation, artificial intelligence, and news and data feed products to help customers track government actions that affect their business.

9.      FiscalNote has developed proprietary products and solutions that it markets and sells to customers to support their customers in tracking and taking actions on laws, regulations, and government actions affecting their businesses.

10.     One such product is FiscalNote's proprietary Engage Platform ("Engage"), an advocacy tool that allows customers to easily engage with elected officials to address issues of importance to the customers.

<u>Germain's Initial Employment with FiscalNote</u>

11.     In August 2018, as part of its efforts to expand its operations, FiscalNote acquired CQ Roll Call, a news outlet that focuses on reporting news and data related to the federal government.

12.     As part of the acquisition, FiscalNote integrated CQ Roll Call's operations into FiscalNote.

13.     Germain had served as the Chief Digital Officer and Senior Vice President for Technology and Product Development at CQ Roll Call.  After the CQ Roll Call acquisition, Germain became FiscalNote's Senior Vice President of Research and Development.  In that capacity Germain was a member of FiscalNote's senior management team reporting directly to its Chief Executive Officer.

14.     Throughout his time at FiscalNote, Germain failed to meet expectations.  Germain failed to address what became persistent issues, many of which were legacy CQ Roll Call issues over which Germain was formerly responsible, within his department.  He failed to properly manage the departments for which he was responsible, including by not addressing underperformance by employees he supervised or implementing a hiring plan to fill key management positions.  Without notice or explanation, he missed or was extremely late to meetings with key staff and executives and was unreachable through internal communication channels, causing those individuals' working time to be wasted and creating bottlenecks in key projects and initiatives.  Germain lacked project management skills and failed to work through organizational hierarchies to implement and stick to workable project plans, instead frequently implementing significant changes in direction without notice or consultation with key

stakeholders, causing the waste of time and effort.  Overall, Germain's mismanagement resulted in difficulties in the departments managed, causing them to underperform expectations.

Germain is Removed From His Senior Vice President Position

15.     On June 24, 2020, FiscalNote removed Germain from his Senior Vice President of Research and Development position because he was unable to effectively manage the departments under his purview.  Germain was placed in the position of Senior Tech Fellow.

16.     After his removal from the Senior Vice President position, Germain's employment was not immediately terminated.  Instead, Germain was expected to continue working to transition his former responsibilities to new department leadership and be available to cooperate with FiscalNote as a source of institutional knowledge, especially regarding legacy CQ Roll Call systems.

17.     Germain did not cooperate with the transition as required and expected.  Instead, at times he refused to communicate with key executives and continued to skip scheduled meetings, leading to a waste of other employees' time and diversion of their attention from other pressing matters.

After the Position Change, Germain Pilfers FiscalNote's Proprietary Information

18.     In or about August 2019, FiscalNote stored some information in cloud-based GDrive accounts made available to employees for corporate use.  Under FiscalNote's policies, which were received by, available, known to, and in some cases approved by Germain, these GDrive accounts were FiscalNote's property.

19.     At the same time that Germain was no longer attempting to meet FiscalNote's expectations for his performance of the Senior Tech Fellow role, Germain began downloading numerous FiscalNote files containing confidential and proprietary information.  On August 20,

2019, Germain's FiscalNote account downloaded approximately 127 files from FiscalNote's GDrive, and on August 21, 2019, the account downloaded an additional 209 files.

20.     Due to Germain's failure to meet FiscalNote's expectations in his Senior Tech Fellow role, FiscalNote informed Germain on or about August 27, 2019 that it would terminate his employment effective September 5, 2019.

21.     After he learned of his impending termination, Germain dramatically escalated his wholesale theft and misappropriation of FiscalNote's confidential and proprietary business information and trade secrets, downloading over 3,600 additional files from the GDrive on August 27, 29, and 30, 2019.

22.     All told, between August 20 and August 30, 2019, the user dan.germain@fiscalnote.com (*i.e.*, Germain) downloaded 3,972 files from the FiscalNote GDrive associated with Germain's FiscalNote account.

23.     Germain's downloads were initiated from an IP address that is not associated with FiscalNote's network.  Instead, FiscalNote was able to track the IP address to Northern Virginia, which is where Germain resides and where Germain Consulting is now incorporated.

24.     The 3,972 documents downloaded by Germain's account included FiscalNote proprietary and confidential information such as data regarding customer churn, customer engagement and feedback, a list of customers who had raised questions about the Engage platform, specific planning and work product created by FiscalNote for customers, FiscalNote strategic plans, employee engagement surveys, financial information, and other non-public data and information regarding FiscalNote's products and current, former, and prospective customers.

25.     The 3,972 documents included copies Germain had created of certain company emails, including emails containing confidential business information.  There was no business

purpose for Germain to create PDF copies of these emails and share and then download them afterward.

26.     There was no business purpose for Germain to download these 3,972 files from the GDrive account, especially after FiscalNote's notice that his employment would be terminated.

27.     Much of the material downloaded by Germain between August 20 and 30, 2019 contained confidential and proprietary information of FiscalNote that are not known or shared outside of the organization without strict guarantees of confidentiality, if at all.

28.     Germain later attempted to delete many of the downloaded files from the GDrive on August 29 and 30, 2019.

29.     On August 22, 2019, without disclosure to FiscalNote, Germain provided a non-FiscalNote email address called djgermain@gmail.com with backdoor access to a folder called "00-Customers" on the FiscalNote GDrive associated with his FiscalNote account .

30.     Germain had previously identified djgermain@gmail.com to FiscalNote as his personal email address in his human resources documentation.

31.     Germain was not authorized to share the "00-Customers" folder or anything else on FiscalNote's GDrive with an outside email address under FiscalNote's policies.  FiscalNote's Acceptable Use Policy expressly provides that: "Personnel may not upload or otherwise share (e.g. by attaching to an e-mail) any software, data or other materials which are owned by or licensed to the Company without explicit authorization from a Manager responsible for the software, data or other materials."  The Acceptable Use Policy also prohibited Germain from "enabl[ing] unauthorized Third Parties to have access or use any Company Resource or otherwise jeopardize the security of any Resource."  In his position as Senior Vice President, Germain had previously approved the Acceptable Use Policy containing these prohibitions.

32.     On September 5, 2019, FiscalNote's termination of Germain's employment became effective.

33.     Upon Germain's termination, FiscalNote discontinued Germain's access to his FiscalNote GDrive account through his FiscalNote email address.

34.     However, following the termination of his employment, Germain circumvented FiscalNote's security efforts and accessed the "00-Customers" folder without authorization.  At no point, whether before or after his termination, did Germain disclose that he had given himself backdoor access to the GDrive.

35.     Under FiscalNote's policies, access to the company's GDrive was authorized for FiscalNote's business only, not for other purposes.  Under FiscalNote's Use of Company Property Policy, use of FiscalNote's property was permitted only "for business necessity."   Under FiscalNote's Acceptable Use Policy, FiscalNote's data and files may be used "only for the purpose of conducting Company or Company-related business."   Under FiscalNote's Access Control Policy – which Germain also approved during his employment – Germain as an outside party was only authorized to access FiscalNote's systems (such as the GDrive and "00-Customers" folder or any of its contents) pursuant to an executed contractual agreement with FiscalNote, which Germain did not have.

36.     Germain knew he was not authorized to access or download any files from the GDrive after his termination.   Germain was an experienced, senior information technology executive responsible for FiscalNote's cybersecurity efforts.   Moreover, Germain himself approved the FiscalNote policies that prohibited such access.

37.     Nonetheless, on October 10, 2019, Germain illicitly and unlawfully downloaded 98 files from the "00-Customers" folder.  These files included customer contracts, strategic growth

plans, technical documentation, pricing information, data regarding customer non-renewals, and data regarding customers who had low levels of engagement with FiscalNote's products.

38.     The information and documents downloaded by Germain on October 10, 2019 were confidential and proprietary information of FiscalNote that were not known or shared outside of the organization without strict guarantees of confidentiality, if at all.

Germain Establishes Germain Consulting and Uses FiscalNote's<br>Confidential Information and Trade Secrets to Launch a Disparaging Marketing Campaign

39.     Shortly after his unauthorized theft of additional FiscalNote documents on October 10, 2019, Germain incorporated Germain Consulting and registered its website in or about early November 2019.

40.     Upon information and belief, Germain has used FiscalNote's proprietary information for the benefit of his company, Germain Consulting.  He has used the information to solicit customers—especially FiscalNote's customers—and to compete directly with FiscalNote.

41.     For example, after downloading information regarding Engage customers with low satisfaction ratings, he then began a marketing campaign entitled "CQ Engage – A Better Alternative."  In that campaign—which targeted FiscalNote's customer base—he falsely claimed that FiscalNote does not take care of its customers and does not provide proper support to the Engage platform.  He emphasized his experience with FiscalNote to boost the credibility of these false statements to FiscalNote's customers.

42.     Armed with the proprietary customer engagement data he stole from FiscalNote, Germain and Germain Consulting were, upon information and belief, able to target the marketing campaign to the best possible leads: customers who (1) were interested enough in the Engage product to purchase it, but (2) may have been dissatisfied with Engage as evidenced by low engagement.

43.     Around the same time as Germain's marketing campaign was underway, the *Washington Business Journal* ("WBJ") published an article about FiscalNote, which painted FiscalNote in a false and defamatory light.  It depicted FiscalNote as a company struggling to retain high-profile clients.  In support for its statements, WBJ quoted from "internal retention documents obtained by the *Washington Business Journal*."

44.     Upon information and belief, Germain gave WBJ the documents it quoted from. FiscalNote has traced certain of the information published by WBJ to a specific confidential, internal FiscalNote document.  Germain downloaded the document prior to publication of the article.

45.     Based on the content of the article, the information provided to WBJ included old and stale documents and information, selectively chosen and taken out of context, in order to create a false and misleading impression of the state of FiscalNote's customer relationships.

46.     Upon information and belief, Germain also told WBJ that FiscalNote is no longer investing in the Engage product and fails to support its clients using the platform.

47.     Upon information and belief, Germain knew that the information he shared about FiscalNote's customers and Engage was incomplete and misleading based on his work at FiscalNote.

48.     Upon information and belief, Germain also shared false, incomplete, and/or misleading information directly with FiscalNote's customers.

49.     Germain refused to cease these illegal tactics or to relinquish the information he stole.  FiscalNote sought to avoid the present lawsuit.  In a February 10, 2020 letter to Germain, FiscalNote simply requested that Germain identify the information he stole, destroy it, and assure that he would not make further use of it.  Germain refused to comply, apparently determined to

maintain, and continue to illegally use, FiscalNote's confidential information.   Subsequent additional pre-suit attempts to resolve this matter were similarly unsuccessful.

## Count I
## Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)

50.     FiscalNote incorporates the averments of paragraphs 1-49 by reference as if fully set forth herein.

51.     The Computer Fraud and Abuse Act prohibits any person from "intentionally accessing any computer without authorization or in excess of authorized access and thereby obtaining information from a protected computer."

52.     At all times following the termination of his employment with FiscalNote on September 5, 2019, Germain was not authorized to access any of FiscalNote's computer or information systems or accounts, including folders on the GDrive associated with his former FiscalNote account.

53.     On or about October 10, 2019, Germain accessed the FiscalNote owned GDrive without authorization or, in the alternative, in excess of any authorization, and obtained information by downloading 98 files.

54.     The GDrive system accessed by Germain was a "protected computer" because it is connected to the Internet, which is an element of interstate commerce and communication, and because it is used by FiscalNote to conduct business in interstate commerce.

55.     Germain's unauthorized access of the GDrive caused damage to FiscalNote in the form of substantial business interruption in investigating and addressing the unauthorized action, salaries paid to employees who were forced to divert their time to addressing the unauthorized action (including the WBJ disclosures which, upon information and belief, stem from the

unauthorized action), and legal fees (other than those incurred in this action) incurred in seeking the return of the stolen information.

56.     The loss caused by Germain's action exceeds $5,000.

57.     FiscalNote has suffered and will continue to suffer compensatory damages from Germain's violations of the CFAA.

**Count II**
**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836)**

58.     FiscalNote incorporates the averments of paragraphs 1-49 by reference as if fully set forth herein.

59.     FiscalNote owns and possesses customer information, pricing data, strategic plans, and technical solutions, as well as proprietary analyses and work product constituting confidential and trade secret information.

60.     FiscalNote took reasonable steps to protect and maintain the secrecy of its trade secrets.  During the period of August to September 2019, FiscalNote maintained security measures it had previously developed including, among other things, establishing password protections, limiting access within the organization to proprietary information, maintaining policies prohibiting non-business use and outside sharing, forbidding outside parties from accessing FiscalNote's systems in the absence of contractual arrangements including non-disclosure agreements, requiring most employees to execute non-disclosure agreements, and maintaining policies requiring information and documents to be kept confidential.

61.     The misappropriated confidential and trade secret information relate to products and services used, sold, shipped, and/or ordered in interstate and foreign commerce.

62.     FiscalNote's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

63.     Germain through improper means, including by downloading thousands of documents immediately prior to his termination and accessing FiscalNote's servers following his termination, used and disclosed confidential and trade secret information to solicit customers and compete directly with FiscalNote.

64.     Germain has used the stolen information to the benefit of his consulting company, Germain Consulting, including by launching a marketing campaign for Germain Consulting's services that made use of FiscalNote's trade secrets.  As Germain is the founder and manager of Germain Consulting, the entity at all times had knowledge that it was improperly using stolen trade secrets.

65.     Despite demand to cease and desist their conduct, Defendants, upon information and belief, continue to use FiscalNote's trade secrets and proprietary information.

66.     As a direct and proximate result of Defendants' conduct, FiscalNote has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages.  For example, FiscalNote is now forced to compete in the market against its own products, including its own pricing strategies and proprietary solutions, and a competitor using customer satisfaction data compiled by FiscalNote to target FiscalNote's own customers.

67.     Defendants' misappropriation of FiscalNote's trade secrets was willful and malicious.

**Count III**
**Violation of the D.C. Uniform Trade Secrets Act (D.C. Code Ann. § 36-401)**

68.     FiscalNote incorporates the averments of paragraphs 1-49 and 59-67 by reference as if fully set forth herein.

69.     The customer information, pricing data, strategic plans, and technical solutions developed by FiscalNote are trade secrets subject to protection under the District of Columbia Uniform Trade Secrets Act.

70.     The proprietary information derives independent economic value by not being accessible, through proper means, to competitors, which can profit from its use or disclosure.

71.     FiscalNote took reasonable steps to protect and maintain the secrecy of its trade secrets.  During the period of August to September 2019, FiscalNote maintained security measures it had previously developed including, among other things, establishing password protections, limiting access within the organization to proprietary information to employees with a business need for access, maintaining policies prohibiting non-business use and outside sharing, requiring most employees to execute non-disclosure agreements, and maintaining policies requiring information and documents to be kept confidential

72.     Germain improperly acquired and used FiscalNote's trade secrets as a result of his prior employment relationship with FiscalNote and by accessing FiscalNote's GDrive without authorization after his termination.

73.     Germain has used the stolen information to the benefit of his consulting company, Germain Consulting, including by launching a marketing campaign for Germain Consulting's services that made use of FiscalNote's trade secrets.  As Germain is the founder and manager of Germain Consulting, the entity at all times had knowledge that it was improperly using stolen trade secrets.

74.     Despite demands to cease and desist their conduct, Defendants, upon information and belief, continue to use FiscalNote's trade secrets and proprietary information.

75.     As a direct and proximate result of Defendants' conduct, FiscalNote has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, irreparable injury, and significant damages.  For example, FiscalNote is now forced to compete in the market against its own products, including its own pricing strategies and proprietary solutions, and a competitor using customer satisfaction data compiled by FiscalNote to target FiscalNote's own customers.

76.     Defendants' misappropriation of FiscalNote's trade secrets was intentional, willful, and malicious.

**Count IV**
**Tortious Interference with Contractual and/or Economic Relations**

77.     FiscalNote incorporates the averments of paragraphs 1-49, 59-67, and 69-76 by reference as if fully set forth herein.

78.     FiscalNote has contractual and/or economic relationships with its customers, including those who use the Engage product.

79.     Upon information and belief, Germain and Germain Consulting used customer lists, customer information, and other trade secrets and proprietary information that Germain misappropriated from Fiscal Note to engage in a marketing campaign entitled "CQ Engage – A better alternative."  Upon information and belief, Germain and Germain Consulting were able to use FiscalNote's trade secrets and proprietary information to target customers who were more likely to be interested in an Engage-type product or more susceptible to leave FiscalNote if offered an alternative option.

80.     In addition, Germain and Germain Consulting's marketing campaign attempted to disrupt FiscalNote's customer relationships by claiming that based on the knowledge and experience he gained while at FiscalNote, that FiscalNote does not invest in the Engage product or take care of its customers.  This was false, defamatory, and disparaging information.

81.     Based on Germain's and Germain Consulting's interference, FiscalNote has suffered damages. Specifically, FiscalNote now must expend significant time and resources to speak with customers and the media regarding the falsehoods.  Although FiscalNote does not yet know the full extent of Defendants' activities, upon information and belief, Defendants' unlawful interference with FiscalNote's customer relationships has caused FiscalNote to lose customers and business that it had or would have otherwise obtained.

**Count V**
**Breach of Fiduciary Duty**

82.     FiscalNote incorporates the averments of paragraphs 1-49 by reference as if fully set forth herein.

83.     During his employment, Germain owed FiscalNote a fiduciary duty based on his position as a senior management employee, which required him to act with FiscalNote's interests in mind.

84.     Germain breached his fiduciary duty by stealing FiscalNote's proprietary information while he was in FiscalNote's employ, immediately prior to his termination.

85.     Germain stole the information for the purpose of using the information at his own business, for his own benefit and gain.

86.     Germain's misuse of confidential information was contrary to FiscalNote's interests.

87.     Germain's action proximately harmed FiscalNote by forcing FiscalNote to compete in the market against its own products, including its own pricing strategies and proprietary solutions.

**Count VI**
**Unfair Competition**

88.     FiscalNote incorporates the averments of paragraphs 1-49 by reference as if fully set forth herein.

89.     Through its unlawful business practices, Germain Consulting has established itself as a direct competitor of FiscalNote.  Rather than follow the law and develop a client base through hard work and effort, Defendants instead took a shortcut and engaged in illegal and unfair conduct in bad faith in order to compete with FiscalNote.

90.     In their marketing campaign described above, Defendants defamed FiscalNote, disparaged FiscalNote's business, violated the CFAA, and stole FiscalNote's trade secrets in order to compete with FiscalNote.  Each of these actions was independently illegal.

91.     Defendants' bad-faith defamation and disparagement of FiscalNote's business, misappropriation of FiscalNote's information, and their improper use of the misappropriated material, constitutes an unfair and unjustifiable attempt to profit from the labors, skills, and expenditures of FiscalNote.  Defendants unfairly exploited Germain's previous employment relationship with FiscalNote to its commercial advantage.

92.     Defendants' acts constitute unfair competition against FiscalNote under the laws of the District of Columbia.

93.     Defendants' unfair competition was reckless, willful, and morally culpable to an extreme degree.

94.     FiscalNote has suffered and will continue to suffer irreparable harm as a result of Defendants' illegal conduct.

**Prayer for Relief**

WHEREFORE, FiscalNote respectfully requests that the Court:

A.      Enter a monetary judgment in favor of FiscalNote and against Germain on Count I and against Germain and Germain Consulting, jointly and severally, on Counts II-VI for compensatory damages caused by Germain and Germain Consulting's unlawful actions in an amount to be proven at trial, plus pre-judgment and post-judgment interest, plus the costs of this action;

B.      Enter an award of permanent injunctive relief prohibiting Germain and Germain Consulting from using FiscalNote's trade secrets and confidential and proprietary information, compelling Germain and Germain Consulting to return such information to FiscalNote; and ordering Germain and Germain Consulting to disgorge any amounts by which they have been unjustly enriched by their unauthorized use of FiscalNote's trade secrets and proprietary information;

C.      Enter a monetary judgment in favor of FiscalNote and against Germain and Germain Consulting, jointly and severally, for punitive and exemplary damages in an amount to be proven at trial;

D.      Award FiscalNote its costs and attorneys' fees pursuant to the District of Columbia Uniform Trade Secrets Act and the Defend Against Trade Secrets Act; and

E.      Grant FiscalNote such other relief as the Court may deem appropriate.

DATED: December 22, 2020    Respectfully submitted,

            FISCALNOTE, INC.


By:_____/s/ D. Jack Blum_____
   D. Jack Blum (Virginia State Bar No. 95532)
   POLSINELLI PC
   1401 I ("Eye") Street, N.W., Suite 800
   Washington, DC 2005
   202.772.8483 | Telephone
   202.783.3535 | Facsimile
   jack.blum@polsinelli.com

   Scott M. Gilbert, (motion for *pro hac vice*
   admission forthcoming)
   POLSINELLI PC
   150 N. Riverside Plaza, Suite 3000
   Chicago, IL 60606
   312.819.1900 | Telephone
   312.819.1910 | Facsimile
   sgilbert@polsinelli.com