REDACTED - PARTIALLY FILED UNDER SEAL - PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| FISCALNOTE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:20-cv-05161 |
| | ) | |
| DANIEL GERMAIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF, FISCALNOTE, INC.'S REPLY IN SUPPORT OF MOTION TO EXTEND EXPERT DISCOVERY**

Plaintiff, FiscalNote, Inc. ("FiscalNote"), by and through its undersigned counsel, files this Reply in support of its Motion to Extend Expert Discovery (ECF No. 26), and in support thereof states as follows:

## I. Introduction

FiscalNote seeks a limited, 45-day extension of the expert disclosure deadlines that will not affect the December 2021 trial date range currently contemplated by the Scheduling Order (though no trial date has yet been set). Although Defendants' Opposition to this request is heavy on rhetoric and attacks, it does not demonstrate how FiscalNote's experts would have formed their opinions by the existing deadline given the delays on the part of Defendants and a third-party, GovPredict, in producing discovery that FiscalNote timely requested for production well in advance of the deadline. Defendants also do not demonstrate any prejudice to themselves or the Court that would result from FiscalNote's request. Accordingly, the limited extension sought by FiscalNote should be granted.

## II. Defendants' Factual Background is Misleading and Lacks Critical Context

In their Opposition to FiscalNote's Motion to Extend Expert Discovery, Defendants set forth a lengthy factual background that is misleading and omits critical context. FiscalNote addresses the most material portions below.

### A. Initial Discussions Between FiscalNote and Germain in Summer 2020.

Defendants' Opposition claims that "Mr. Germain tried to avoid this litigation by providing detailed disclosures and explanations of what he actually did and did not do," ECF No. 29 at 5, but omits the critical context that *much of what Germain told FiscalNote prior to litigation was verifiably false*. After FiscalNote's former counsel disclosed to Defendants' former counsel many of the specific allegations of Germain's downloading activity immediately prior to and following the termination of his employment, Defendants' former counsel asserted that:

> While employed by FN, my client in August of last year 'shared' a FN 'folder,' the folder entitled 00-Customers. . . . You neglect t note that the folder was 'unshared' by my client shortly after being 'shared.' . . . An examination of the Google Drive Audit Report would show that while the folder was in a 'share' status, there is no digital footprint that would substantiate that my client 'downloaded' the folder or any part of the folder. . . . At no time did my client download to his personal account the '00-Customers' folder or any part thereof. . . . What he did download were these old CQ Project Yeats documents.

See E-mail dated June 15, 2020, attached as Exhibit 9.[1] In fact, every aspect of this explanation is disproven by the Google Drive Audit Logs referenced in support. Those logs show that on August 22, 2019, two weeks before his termination, Germain shared the 00-Customers folder with his personal email account in violation of FiscalNote's policies. ECF No. 1 at 7 (¶¶ 29-31). Far from immediately un-sharing the 00-Customers folder, the logs show that Germain used his backdoor access through his personal account to download 98 files from the 00-Customers folder. *Id.* at 8-

[1] FiscalNote continues its exhibit numbering from its initial Motion.

9 (¶ 37). And, far from being old, inconsequential documents as Germain's former counsel represented, the downloaded documents included such confidential and proprietary materials as FiscalNote's customer contracts, strategic growth plans, and customer renewal and engagement data. *Id.*

When FiscalNote confronted Germain's former counsel with additional factual details demonstrating why Germain's first explanation was false, Germain dug in his heels and presented additional verifiable misrepresentations. In response to the fact that the Google Drive Audit Logs showed Germain downloaded nearly 4,000 files from FiscalNote's Google Drives in the last days of his employment, including after he was told he would be fired, Germain's former counsel asserted that Germain "wanted to ensure that his institutional knowledge was transferred so that the appropriate individuals in the company would have access to such information," and therefore "downloaded groups of files and folders from his individual GDrive and then uploaded these files to the Google Team Drive." See E-mail dated July 15, 2020, attached as Exhibit 10. In fact, the Google audit log showed that Germain downloaded files from 24 separate FiscalNote individual and team drives (not just his individual drive as claimed).[2] Moreover, Germain's explanation that he was merely trying to pass on "institutional knowledge" was also false, as the audit logs show he did not re-upload more than 70% of the downloaded files, including the most sensitive files containing proprietary information about FiscalNote's customers. Germain also continued to falsely assert that he did not download files from the 00-Customers folder, claiming he "never

[2] Defendants continue to assert this false claim to this day. *See* ECF No. 29-7 at 3 (asserting that "what Mr. Germain was actually doing between August 20 and 30 of 2019 was transferring files from an individual *FiscalNote* cloud account to a new *FiscalNote* cloud account," overlooking the fact that the files were downloaded to Germain's computer and came from 24 different FiscalNote drives, not just Germain's individual drive).

attempted to download a single file," even though the Google audit logs clearly show that was the case.

Accordingly, FiscalNote was not unreasonable in declining to accept Defendants' pleas of innocence at face value given his verifiably false representations. Defendants' claim that their counsel's disclosure that Germain destroyed a hard drive containing FiscalNote files with a hammer should have somehow allayed FiscalNote's concerns borders on nonsensical, as this Court has described similar conduct by a litigant as "egregious." *Taylor v. Mitre Corp.*, 2012 WL 5473573, at *2 (E.D. Va. Nov. 8, 2012). The claim in Germain's Opposition that he "routinely" destroyed hard drives in such a manner is unworthy of credence. ECF No. 29 at 4.

B. <u>Post-Suit Discussions with Germain</u>.

As FiscalNote was unable to resolve its disputes with Defendants, or even get past Germain's denials of objective facts conclusively disproven by the Google audit logs, it filed suit on December 22, 2020. ECF No. 1. After filing suit, counsel for FiscalNote and new counsel for Defendants agreed to undertake a process for the parties to exchange certain information in the hopes of resolving the disputes between them. Through this process, FiscalNote learned for the first time in April 2021 that [redacted] – two days after he hammered his hard drive containing FiscalNote documents - [redacted]. The spreadsheet did not just "include[] some of the same categories of information" as found in FiscalNote's SalesForce database, but mirrored a report generated from that database [redacted]

[redacted]. Defendants try to insinuate that FiscalNote's belief that Germain misappropriated the spreadsheet information from the SalesForce database because FiscalNote made the allegation "for the first time ever" in April 2021, but FiscalNote did not have knowledge of Germain's December 4, 2019 email until that point.

Moreover, as detailed in FiscalNote's Motion to Extend Expert Discovery, Defendants' production was incomplete and left out material aspects of his relationship with GovPredict. Defendants provided documents in response to search terms (which FiscalNote had to craft without the benefit of any other discovery or disclosure), but did not provide other material documents such as Germain's contract with GovPredict, which showed the [redacted]. In addition, although Germain's marketing emails invited recipients to schedule a call with him through an app called MixMax, Germain did not produce any data showing activity through that app. FiscalNote requested that data from Germain in its discovery requests, but the data has not been produced to date. *See* ECF No. 26-2 at 22.

C. The Course of Discovery in this Action.

Defendants also argue that once active proceedings in this litigation commenced following the breakdown of the resolution process, FiscalNote unreasonably delayed in serving discovery. In fact, FiscalNote served discovery promptly, as on June 23, 2021 it issued a subpoena to GovPredict (promptly served two (2) days later) and written discovery to Defendants. Although Defendants appear to fault FiscalNote for not serving this discovery at the earliest possible moment, the June 23, 2021 discovery was returnable on July 23, 2021, more than three (3) weeks in advance of the initial expert disclosure deadline. Defendants offer no argument that the alleged

delay in serving discovery made any difference to FiscalNote's ability to obtain the necessary materials sufficiently prior to the expert disclosure deadline.

Defendants' Opposition also lacks critical context regarding the hard drive. FiscalNote requested production of the destroyed hard drive on July 23, 2021. When it had not been provided in the days following that deadline, FiscalNote's counsel contacted Defendants' counsel on July 30, 2021 to discuss the matter, but Defendants' counsel was not available until the following week. ECF No. 26-8 at 21. Defendants do not dispute that when the discussion finally occurred on August 2, 2021, Defendants refused to produce the hard drive to FiscalNote's expert (who Defendants admit was disclosed during the call, *see* ECF No. 29 at 8-9), but instead unreasonably sought to require him to conduct his examination in a law firm conference room, an unacceptable restriction to the expert. Although FiscalNote did propose that the parties pause certain discovery efforts pending settlement negotiations based on GovPredict's production (which did not ultimately occur until August 6 and 13, 2021), the email record shows that FiscalNote continued to press for production of the hard drive to its expert at his office *the very next day*. *See* ECF No. 26-8 at 18 (August 3, 2021 email arguing that the expert "does not believe it appropriate to conduct any type of physical examination in a non-controlled environment like a law firm conference room"). Indeed, Defendants do not deny in their Opposition that they *could not have produced the hard drive on August 2, 2021* because Germain did not even provide it to his counsel until September 7, 2021. *Id.* at 2. At that point, FiscalNote's expert immediately acted to obtain the hard drive once it became available. Photographs of the hard drive are attached as Exhibit 11, and demonstrate the lengths to which Germain went to destroy the device and cover his tracks.

Defendants also appear to argue that FiscalNote is at fault for *GovPredict's* delay in producing documents in response to FiscalNote's subpoena. That production was due July 23,

2021. *See* ECF No. 26-1 at 5. However, FiscalNote was forced to engage in good faith negotiations to resolve GovPredict's objection to the subpoena. Such efforts were *required* by the Court's Local Rule 37, which orders counsel to "confer to decrease, *in every way possible*, the filing of unnecessary discovery motions," Local Rule 37(E) (emphasis added), and avoid "[t]he presentation to the Court of unnecessary discovery motions." Local Rule 37(G). FiscalNote negotiated with GovPredict to resolve GovPredict's objections and avoid an unnecessary discovery motion. Defendants' argument that FiscalNote should have eschewed these efforts to resolve the discovery dispute with GovPredict and instead immediately rushed to the Court to file a potentially unnecessary discovery motion is not well taken.

Indeed, the delays in GovPredict's production were almost entirely caused by GovPredict's counsel's unavailability. FiscalNote responded to GovPredict's objection within three (3) days of receipt.[3] After responding in writing to the objection on July 16, 2021, counsel for FiscalNote tried to schedule a call with counsel for GovPredict on the next business day, July 19, 2021, but was unable to schedule the call until July 22, 2021 due to counsel for GovPredict's travel schedule. See Email dated July 20, 2021, attached as Exhibit 12. GovPredict's counsel represented that a production would be made as early as July 28, 2021 (more than two (2) weeks before the expert disclosure deadline), *see* ECF No. 26-5 at 2, but it was not until August 6 and 13, 2021 that partial productions were made, with no production of customer documents even by that late point. *See* ECF No. 26-7 at 2.

[3] Notably, FiscalNote's counsel to whom the objection was addressed was traveling for witness interviews in St. Louis on the day of the objection's receipt in hardcopy form at his office in Washington, D.C.

## III. Argument

The above-described history shows that FiscalNote has exercised reasonable diligence in pursuing the discovery it needs for its proposed experts to form their opinions, but has not been able to obtain that discovery due to circumstances outside of its control: delays in production by GovPredict and Defendants. Regardless of which of the "excusable neglect" or "good cause" standards applies, FiscalNote meets that standard. As even Defendants must recognize, the excusable neglect standard permits late filings that result from "intervening circumstances that a party could not control." ECF No. 29 at 10 (quoting *Tinsley v. Scott's Co.*, 2020 WL 72600356, at *1 (E.D. Va. Nov. 5, 2020)). That is the case here. Because FiscalNote was not able to obtain the information its experts needed due to circumstances outside of its control, and because the requested extension will not unduly prejudice the progress of this action or Defendants' ability to defend FiscalNote's claims, even the excusable neglect standard is satisfied. *See Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996) (identifying as relevant factors, (1) the danger of prejudice to the non-moving party, (2) length of delay and potential impact on judicial proceedings, (3) reason for delay, and (4) whether the movant acted in good faith).

### A. FiscalNote's Diligence and Legitimate Reasons for Delay.

As the factual background described above shows, FiscalNote has exercised reasonable diligence to obtain the materials needed by each of its experts, but has been thwarted by circumstances beyond its control.

As a matter of commonsense, FiscalNote's computer forensic expert could not begin his analysis of Germain's spoliation of the hard drive without having the actual hard drive in his possession to examine. Defendants argue that FiscalNote knew of the hard drive for a year, but that point is immaterial – the expert cannot form an opinion based on a one-sentence description

in an email, but needed the actual device in hand. To FiscalNote's knowledge, the hard drive was exclusively in Germain's possession at all times prior to September 7, 2021, when Germain finally provided the hard drive to his counsel who provided it to FiscalNote's expert. The only way FiscalNote could obtain the hard drive was by discovery request. FiscalNote served its discovery to Germain reasonably promptly (in fact, before Defendants issued any discovery to FiscalNote) such that the hard drive should have been produced on or shortly after July 23, 2021. Although Defendants claim FiscalNote was somehow negligent in not following up on the hard drive when they didn't produce it, Defendants omit to mention that they provided their discovery responses at 8:38pm on July 23, 2021, well after the close of business on a Friday. When Defendants did not comply with *their obligation* (not FiscalNote's) to produce the hard drive the following week, counsel for FiscalNote followed up at 10:14am on Friday, July 30, 2021 to discuss the matter, but defense counsel was unavailable to speak until the following Monday. Thereafter, FiscalNote continued to seek production to its expert at his office, but Defendants did not produce the hard drive for weeks. Given that "excusable neglect" is "at bottom an equitable inquiry," *Thompson*, 76 F.3d at 533, the Court must take into account Defendants' own unclean hands in failing to produce the hard drive.

Moreover, Defendants' contention that they did not know FiscalNote's forensic expert would testify is, at best, an exercise in splitting hairs. Defendants admit that the expert's identity was disclosed to them on August 2, 2021. ECF No. 29 at 8. Although they claim that they were not explicitly told that the expert would testify, as opposed to conducting a review, that explanation defies credulity. A simple search on Westlaw within the Fourth Circuit for the expert's last name, "Racich," reveals at least three (3) prior cases in this Court where the expert was accepted as an expert and testified regarding spoliation issues. *See Integrated Global Servs., Inc. v. Mayo*, 2017

WL 4052809, at *9 (E.D. Va. Sept. 13, 2017) (noting the "admissible, relevant, and competent expert testimony of Racich"); *Federico v. Lincoln Military Housing, LLC*, 2014 WL 7447937 (E.D. Va. Dec. 31, 2014); *Taylor, supra*. Especially given the circumstances of the device's destruction with a hammer, it should have been obvious that the device would give rise to potential spoliation issues on which there might be expert testimony from the expert FiscalNote explicitly identified. Only willful blindness can explain any alleged surprise regarding Mr. Racich's testimony.

The same goes for FiscalNote's economic expert. Although FiscalNote knew of its substantial loss of business (over $300,000) related to the customers listed on Germain's spreadsheet, it did not know which of the customers were lost to GovPredict, and had no way of getting that information except from GovPredict itself. As outlined above, FiscalNote attempted to obtain the necessary customer information from GovPredict, but GovPredict delayed making any production on this issue. FiscalNote served its subpoena to GovPredict such that it was returnable well in advance of the expert disclosure deadline and acted diligently to undertake the required good-faith process to resolve the discovery dispute. FiscalNote should not be punished for complying with Local Rule 37 and seeking to avoid bringing a potentially unnecessary discovery motion before the Court. With respect to the reasonable royalty theory of damages, that theory is available only as an exclusive alternative to other measures of damages, *see* D.C. Code Ann. § 36-403(a), and given FiscalNote's substantial customer losses, FiscalNote did not know of the potential need to rely on the theory until receiving GovPredict's production and discussions with GovPredict's counsel mere days before the expert deadline.[4] Given Germain's repeated

---

[4] FiscalNote does not concede that it suffered no actual damages as Defendants insinuate, since GovPredict has not produced all of the requested customer information to evaluate such a claim.

misrepresentations about his downloading activities throughout the litigation process, FiscalNote was not required to accept on faith alone his claims regarding customer loss. Although FiscalNote did not explicitly disclose to Defendants that it would call an economic expert, this Court has held that a similar lack of notice did not preclude the use of an untimely designated expert under the excusable neglect standard. *United States v. Martin*, 2014 WL 3058514, at *2 (E.D. Va. Jun. 6, 2014).

FiscalNote's attempt to seek resolution of this case through settlement based on GovPredict's production was a legitimate reason for filing its Motion to Extend Expert Discovery after the deadline passed. After settlement efforts broke down, FiscalNote moved promptly to seek to extend the deadline. On Thursday, August 26, 2021, counsel for Defendants emailed counsel for FiscalNote to state that the parties should re-focus on discovery as settlement negotiations were at loggerheads, and counsel held a call on August 30, 2021, the following Monday. See Email chain dated July 30-August 31, 2021, attached as Exhibit 13. During the August 30, 2021 call, counsel for FiscalNote proposed extending the expert disclosure deadlines. The next afternoon (4:25pm), August 31, 2021, counsel for Defendants advised that Defendants did not agree to the extension. *Id*. FiscalNote immediately filed its Motion the following day, and scheduled it for the earliest possible hearing date. FiscalNote filed its Motion only 17 days after the expert deadline, far less time than in the cases relied upon by Defendants. *See Bryant v. Trexler Trucking, Inc.*, 2012 WL 12897335, at *2 (D.S.C. Dec. 19, 2012) (motion filed 6 months after deadline).

Defendants' heavy reliance on *Patel v. Jackson Nat. Life Ins. Co.*, 2016 WL 9223853 (E.D. Va. Jun. 3, 2016), is misplaced. In that case, although the plaintiff similarly alleged a pause in discovery proceedings pending settlement, the defendant denied the existence of any such

agreement. Here, Defendants do not disagree that the parties agreed to pause discovery efforts while exploring a potential settlement. More importantly, however, in *Patel*, the Court noted that granting the requested extension "would almost certainly force the Court to delay the trial date." *Id.* at *1. Indeed, a review of the docket of that case shows that the trial date was scheduled for August 15, 2016, but the plaintiff did not seek to extend the expert deadline until May 24, 2016. *Patel v. Jackson Nat. Life Ins. Co.*, No. 3:16-cv-00043-HEH, at ECF Nos. 5, 8. Here, there is no scheduled trial date, and, as described below, Defendants do not argue that FiscalNote's requested extension would impair the ability to hold a December 2021 trial, as currently contemplated by the framework set forth in the Court's Scheduling Order.

B. Lack of Prejudice to the Court and Defendants.

Defendants' Opposition does not even attempt to outline any impact that FiscalNote's requested extension would have on the judicial proceedings in this action, focusing exclusively on a generalized interest in complying with the existing deadline. ECF No. 29 at 17. Although FiscalNote does not lightly seek to alter the existing deadline, it notes that in the sole case Defendants cite regarding prejudice to these proceedings, the plaintiff was seeking a *second* extension of the expert deadline, after previously receiving an extension exceeding four (4) months. *See Simmons v. Corizon Health, Inc.*, 2016 WL 4537744, at *1 (M.D.N.C. Aug. 29, 2016). By contrast, the Court has not previously extended any of the discovery deadlines in this case.

Defendants provide no argument that the requested extension of disclosing principal experts by September 30, 2021 and rebuttal experts by October 30, 2021 would prevent this action from going to trial in December 2021 as currently contemplated in the Scheduling Order. *See* ECF No. 18 at 1; *also Martin*, 2014 WL 3058514, at *2 (finding excusable neglect standard satisfied

where the government's disclosure of an expert ***one week before trial*** would not impact the trial date, even though the Court found that the reason for delay was entirely within the government's control). Even with the proposed extension, this case is firmly on track to conclude within the Court's average of 14.3 months from filing to trial (*i.e.*, by mid-March 2022). *See* ECF No. 26 at 11.

Defendants offer misleading arguments in their attempt to show they will be prejudiced by FiscalNote's proposed extension. Under the proposed schedule, Defendants would have the exact same 30 days as under the existing schedule within which to produce any rebuttal report- contrary to the Opposition's assertion, the time for a rebuttal report is ***not*** reduced to 15 days under FiscalNote's proposed schedule. Given that Germain's hard drive has been in Defendants' possession for nearly two (2) years since he attempted to destroy it, it is unclear why he would need any substantial period of time to produce a rebuttal report. Defendants state that fact depositions may have occurred before the proposed September 30, 2021 deadline, but this claim is misleading because no depositions have yet been scheduled in this case, and Defendants have not identified any deponents save for a representative of FiscalNote, with no Rule 30(b)(6) notice specifying the areas of testimony yet served, and have not asked for any witness' availability or sought to clear dates with FiscalNote's counsel for depositions. Defendants' concern about deposition scheduling is completely illusory. Defendants' claim about an alleged need for supplemental written discovery is also illusory given that Defendants served extensive discovery including 65 requests for production of documents with numerous requests regarding expert witnesses. See Defendants' First Request for Production of Documents, attached as Exhibit 14. Moreover, FiscalNote does not object to allowing Defendants to take limited out-of-time discovery regarding any experts, as this Court recently permitted in *Jaguar Land Rover, Ltd. v. Bentley*

*Motors Ltd.*, 2020 WL 6817060, at *5 (E.D. Va. Nov. 3, 2020). Indeed, Defendants' Opposition does not engage with the *Jaguar Land Rover* decision, despite the fact that FiscalNote's Motion noted that it presents a prudent framework to allow this case to be heard on its merits and avoid the "extreme sanction" of excluding expert testimony. *Id.*

C. FiscalNote Acted in Good Faith.

Defendants' Opposition cooks up a theory that FiscalNote's actions were undertaken in bad faith based entirely on the misleading assertion that FiscalNote did not disclose "that it had any intention of introducing expert testimony." ECF No. 29 at 16. However, as described above, that assertion is simply false. FiscalNote disclosed to Defendants on August 2, 2021, before the expert deadline, that it intended for its forensic expert to inspect the damaged hard drive. In emails with defense counsel, counsel for FiscalNote explicitly described Mr. Racich as an "expert." ECF No. 26-8. Clearly, FiscalNote intended to utilize the forensic expert well before the settlement discussions that commenced August 2, 2021. Moreover, it is hardly unusual, and does not give rise to any inference of bad faith, for a party to utilize an economic damages expert in a trade secret misappropriation case.

Nor are the experts' proposed opinions "spurious" as Defendants claim. ECF No. 29 at 16. With respect to spoliation, Germain engaged in conduct this Court has defined as "egregious" by smashing a relevant device to pieces with a hammer. *Taylor*, 2012 WL 5473573, at *2. Contrary to Defendants' assertions, Germain had a reasonable anticipation of litigation with FiscalNote in December 2019 because he: (1) had already engaged in his illicit downloading activity, (2) [redacted], and (3) was consulting with legal counsel regarding FiscalNote in December 2019. See Email dated February 23, 2020, attached as Exhibit

15 (email from Germain stating that "I vetted my marketing campaign with that same [lawyer] representative prior to launching"); *also In re Failon*, 2016 WL 1238912, at *6 (Bankr. E.D. Va. Mar. 29, 2016) ("seeking legal counsel is indicative of anticipating litigation").

The "reasonable royalty" damage theory is also not spurious. Defendants appear to take a "no harm, no foul" approach, claiming that although they stole FiscalNote's data, they should get off scot-free for their wrongful conduct because they were not successful in effectively using the stolen information. This Court recognizes otherwise: "The lack of significant profits does not insulate the defendant from being obliged to pay for what it has wrongfully obtained in the mistaken belief its theft would benefit it." *American Sales Corp. v. Adventure Travel, Inc.*, 862 F. Supp. 1476, 1479-80 (E.D. Va. 1994) (quoting *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974)). Contrary to Defendants' contentions about how the reasonable royalty should be measured, this Court has ruled that the calculation of the reasonable royalty in "each case is controlled by its own peculiar facts and circumstances" and "courts should remain flexible and imaginative" in computing such damages. *Id*. at 1479 (quoting *University Computing Co.*, *supra*). Indeed, in very similar circumstances to this case, the Court assigned value to a misappropriated customer list even though the defendant had obtained extremely minimal sales from the use of the list. *Id*. at 1480.

Finally, Defendants' ill-supported good faith arguments ignore a far more plausible explanation for FiscalNote's actions: a desire to economically pursue settlement of this case. In *Martin*, this Court recognized such a motivation as being in good faith. There, the government did not disclose an expert witness until seven (7) days before a criminal trial because it did not learn until the day before the disclosure "that Defendant had finally rejected the Government's plea offer, and that this case would be proceeding to trial." *Martin*, 2014 WL 3058514, at *2. In light

of those facts, the Court found "no evidence of bad faith by the Government." *Id.* Similarly here, when settlement talks fell through, FiscalNote promptly proposed the expert disclosure extension and then filed its Motion when Defendants rejected the proposal.

**IV. Conclusion**

For the reasons stated in FiscalNote's Motion to Extend Expert Discovery and this Reply, a limited, 45-day extension of the expert disclosure deadline is appropriate, and the Motion should be granted.

Dated: September 9, 2021

FISCALNOTE, INC.

By: /s/ D. Jack Blum

D. Jack Blum (Virginia State Bar No. 95532)
POLSINELLI PC
1401 I ("Eye") Street, N.W., Suite 800
Washington, D.C. 20005
202.772.8483 | Telephone
202.783.3535 | Facsimile
jack.blum@polsinelli.com

Scott M. Gilbert, (admitted *pro hac vice*)
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
312.819.1900 | Telephone
312.819.1910 | Facsimile
sgilbert@polsinelli.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2021, a copy of the foregoing was served by the Court's CM/ECF system and electronic mail to all counsel of record in this action.

/s/ D. Jack Blum
D. Jack Blum